UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | : | |
| OF THE UNITED STATES OF AMERICA | : | Case No.: |
| FOR A SEARCH WARRANT FOR  A | : | |
| BOOST MOBILE MOTOROLA i296, WITH | : | UNDER SEAL |
| IMEI 001700408032910 | : | |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

1.      I, Alicia M. McShane, am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), (hereinafter, "your affiant") being duly sworn under oath, do hereby depose and state as follows:

2.      I have been employed as a Special Agent of the FBI since August, 2009, and am currently assigned to the Northern Virginia Resident Agency of the Washington Field Office.  I am currently assigned to investigations relating to, among other things, crimes against children, including the sex trafficking of children and prostitution investigations.  I have received training in Commercial Sexual Exploitation of Children and have participated in numerous interviews and debriefings of person involved in prostitution and child prostitution.  I have gained expertise in the conduct of such investigation through formal training and on-the-job training with more experienced agents.

3.      As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

4.      Based on my personal knowledge, training and experience, I know the following:

(a)  Men who organize, monitor and/or operate an illegitimate escort business/a prostitution service are commonly referred to as "pimps."  It is the pimp's job to control, organize, monitor and provide security for his prostitutes.  Pimps often maintain control of their

prostitutes through physical violence and often use firearms to threaten prostitutes and to intimidate other pimps and customers;

(b)   Prostitution remains largely a cash based business and pimps are known to store or carry significant amounts of case.  A pimp will commonly receive all of the cash proceeds of the prostitution business from his prostitutes.  The pimp uses the prostitute's earnings to provide her with food, housing, transportation and clothing.  This clothing usually consists of high-heeled shoes and small, revealing and tight-fitting items more akin to lingerie.  Often pimps will also provide wigs to help conceal a prostitute's age or appearance.  The pimp will also possess and provide condoms, sexual lubricants, sexual toys and other prostitution related items.  In addition, pimps frequently purchase and possess illegal narcotics to provide to their prostitutes who are often addicted to illegal narcotics;

(c)   The housing may be temporary or permanent to include private homes, apartments and/or hotel rooms.  A pimp usually prohibits his prostitutes from possessing enough cash to survive without the pimp;

(d)   Pimps regularly photograph their prostitutes in various stages of undress and often use those photographs to advertise the prostitutes in print media or on-line;

(e)   Pimps often use aliases and help prostitutes obtain or maintain false identities.  As such, pimps often maintain items consistent with the provision of false identification including, but not limited to: false "official" documents, correspondence, bills and mail addressed to false names.  A pimp will often control his prostitute's true identification documents in order to prevent her from leaving;

(f) Pimps commonly maintain telephone numbers, addresses and directions in computer databases, books and papers. Pimps commonly maintain telephone numbers and other information related to the business in mobile telephones. Almost all communication between a pimp and prostitute, while she working, is conducted by mobile telephones. Almost all communication between a pimp and prostitute, while she is working, is conducted by mobile telephone and to control use of the mobile phone the pimp often purchases phones for his prostitutes to use. Computers are also commonly used and as such hold evidence of the illegal operation such as: photographs, calendars, addresses, customer lists, advertisements and financial records.

(g) Pimps often use the proceeds from their illegal business to purchase gaudy jewelry and flamboyant clothing which is worn by pimps to show others that they are making significant sums of money; and

(h) A high prostitution area is known as "the track." Although there are no exact borders, the main track in Washington, D.C. extends from approximately 13th Street to 16th Street and L Street to K Street in the Northwest Quadrant, but there are also tracks in D.C. along New York Avenue, N.E., Rhode Island Avenue, N.E. and Georgia Avenue, N.W. Prostitutes walk along the track offering to exchange sexual activity for cash.

5. This affidavit is based, in part, upon information provided to me by other Special Agents of the FBI and officers of the Washington, D.C. Metropolitan Police Department (MPD), witnesses, physical surveillance, and other information gathered during the course of this investigation. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for a cellular telephone, I have not included each and every fact known to me concerning

this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the issuance of this search warrant.

6.     As a result of my personal participation in this investigation, as well as through interviews with and analysis of reports submitted by other Special Agents of the FBI and officers of the MPD who are involved in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts to show there is probable cause to believe that fruits and evidence of offenses involving violation of: 18 United States Code Sections 2423(a) and 1591(a), Transportation and Sex Trafficking of Children, are located within the cellular telephone that was seized from a juvenile, B.B. when she was intercepted by MPD law enforcement officers for truancy on May 31, 2011 in Washington, D.C. The cellular telephone was placed in the MPD's Narcotics and Special Investigations Division's (NSID) in the District of Columbia. The cellular telephone was placed in temporary storage until custody was relinquished to the FBI, on June 1, 2011, where the cellular telephone has remained. The cellular telephone is currently located at 601 4th Street, N.W. Washington, D.C.

7.     Your affiant respectfully submits this affidavit in support of an application for a warrant to search the cellular telephone described in Attachment A, attached hereto, (hereinafter "CELL PHONE"), which currently is located at the FBI Washington Field Office in the District of Columbia. Your affiant is requesting authority to search the CELL PHONE in its entirety where the items specified in Attachment B may be found, and to seize all items in Attachment B as instrumentalities, fruits, and evidence of crime.

## STATUTORY AUTHORITY

8.     This investigation concerns an alleged violations of Title 18, United States Code, Section 2423(a), (interstate transportation of minor to engage in sexual activity) and Title 18, United States Code, Section 1591 (sex trafficking of children).

9.     The relevant statutory text for purposes of this Affidavit is:

  (a)   Title 18, United States Code, Section 2423(a) states:

   A person who knowingly transports an individual who has not attained the age of 18 years in interstate commerce...with the intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined this title and imprisoned not less than 10 years or for life.

  (b)   Title 18, United States Code, Section 1591 (a)(1) states:

    Whoever knowingly- in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides or obtains by any means a person...knowing that the person has not attained the age of 18 years will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

  (c)   Title 18, United States Code, Section 1591(c)(1) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

## DEFINITIONS

10.    The following terms have the indicated meaning in this affidavit:

  (a)  A cellular telephone is a handheld wireless device used primarily for voice communication through radio signals.  These telephones send signals through networks of

transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system technology for determining the location of the device.

## ELECTRONIC DEVICES AND STORAGE

11.     Based on my knowledge, training, and experience, I know that cell phones can store information for long periods of time. Even when a user deletes information from cell phone, it can sometimes be recovered with forensics tools.

12.     As described above and in Attachment A, this application seeks permission to search a Boost Mobile Motorola i296, with IMEI 001700408032910. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or

take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the FBI and its agents intend to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## THE INVESTIGATION AND THE SUBJECT ITEMS

13. For the reasons set forth below, there is probable cause to believe that evidence of sex trafficking of minors will be located on the CELL PHONE.

14. This investigation relates to the transportation of minors for illegal sexual activity and related crimes. On May 31, 2011, two juvenile females, hereafter B.B., age fourteen, and J.M., age fifteen, were stopped by officers with the Metropolitan Police Department for truancy. B.B. and J.M. were taken to Child and Family Services in the District of Columbia, who then contacted members of the Child Exploitation Task Force (CETF) to speak with B.B and J.M. related to prostitution activity in the District of Columbia.

15. Members of the CETF learned that B.B. worked for approximately one month under the direction of a pimp named "SMOKE," who was later identified as ROBERT ELTON BRATHWAITE. B.B. reported she met BRATHWAITE through a friend with whom she was staying in Washington, D.C. whom B.B. knew as "SOUTH." "SOUTH," who was later identified as JEREMY DAVON MOORER, introduced B.B. to BRATHWAITE and informed BRATHWAITE that B.B. wanted to make money by prostituting. B.B. had stayed at

MOORER'S apartment several times and reported having personal belongings inside the apartment. B.B. would stay at MOORER'S apartment during the day and would be picked up by SMOKE at night, for the purpose of exploiting B.B. as a prostitute. B.B. described MOORER as her "caretaker."

16.     B.B. reported she prostituted on the "track" in the area of 13th and K Streets in Northwest Washington, D.C. B.B. reported that, on at least one occasion, BRATHWAITE drove B.B. to a location in Maryland. Once in Maryland, BRATHWAITE picked up an adult female. The adult female joined BRATHWAITE and B.B. in the car. BRATHWAITE then drove back to D.C. to the area near 13th and K Streets, N.W. I know, based on my experience, that the area around 13th Street and K Streets, N.W. is known for prostitution activity.

17.     BRATHWAITE instructed B.B. to charge one-hundred dollars for sexual intercourse and eighty dollars for oral sex. BRATHWAITE instructed B.B. if a customer wanted a "two girl special" to charge three-hundred and seventy-five dollars. BRATHWAITE told B.B. that all proceeds of sexual acts for money were to be given to him each night. B.B. recalled one particular night when she was paid two-hundred and eighty dollars for performing sexual acts for money. B.B. gave all the proceeds of the sexual acts to BRATHWAITE; he accepted the money and returned one-hundred dollars to B.B.

18.     B.B. reported that on May 31, 2011, she used the CELL PHONE to contact BRATHWAITE and that BRATHWAITE called the CELL PHONE to contact B.B.

19.     While attempting to pick up B.B., BRATHWAITE was intercepted by members of the CETF while driving a white Lexus LX470, with a license plate CS-9331 and registered in the name of ROBERT E BRATHWAITE in the District of Columbia on the street next to

MOORER'S apartment.  BRATHWAITE provided identification to law enforcement officers and when asked about other names, BRATHWAITE stated "some people call me Smoke."

20.     In plain view in the passenger compartment in the backseat of the vehicle, a tin with the word "Durex" across the top was visible.  The tin contained condoms, which B.B. reported BRATHWAITE would give her before dropping her off to prostitute on the track.

### REQUEST TO SEARCH THE ITEMS

21.     In light of the foregoing information, and based on my experience and training, I submit that there is probable cause to believe that the CELL PHONE contains evidence concerning violations of Title 18, United States Code, Section 2423(a) and 1591(a) and that the fruits and instrumentalities of this violation can be found in the CELL PHONE.  Rule 41 of the Federal Rules of Criminal Procedure permits the government to search, analyze, and test electronic devices that are evidence of crime, instrumentalities of crime, and/or fruits of crime.

### CONCLUSION

22.     Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that ROBERT ELTON BRATHWAITE, aka SMOKE, has violated Title 18, United States Code, Section 2423(a) and 1591(a) and that there currently is located on the CELL PHONE evidence and instrumentalities of that offense.

23. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of the item listed in Attachment A.

                                                            Special Agent Alicia M. McShane
                                                            Federal Bureau of Investigation

Sworn and subscribed before me
this _____ day of June, 2011

_____
UNITED STATES MAGISTRATE JUDGE